IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 26, 2019

## STATE OF TENNESSEE v. ANTHONY HUMBERTO CUEVAS

**Appeal from the Criminal Court for Hamilton County**
**No. 295059     Barry A. Steelman, Judge**

_____

### No. E2018-01002-CCA-R3-CD

_____

The defendant, Anthony Humberto Cuevas, appeals the Hamilton County Criminal Court's decision imposing consecutive sentences for his guilty-pleaded convictions of aggravated burglary and theft of property valued at $60,000 or more but less than $250,000.  Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE, and D. KELLY THOMAS, JR., JJ., joined.

Blake F. Murchison, Chattanooga, Tennessee, for the appellant, Anthony Humberto Cuevas.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Neal Pinkston, District Attorney General; and Jason Demastus, and Andrew Coyle, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

The Hamilton County Grand Jury charged the defendant, Anthony Humberto Cuevas, with aggravated burglary and theft of property valued at more than $60,000 but less than $250,000.  Pursuant to a plea agreement, the defendant pleaded guilty as charged, and the State agreed for the defendant to be sentenced as a Range I offender.  Otherwise, the sentence was to be determined by the trial court.

At the plea submission hearing, the State summarized the facts giving rise to the charges:

[O]n or about March the 30th of 2015, officers with the

Lookout Mountain Police Department were called regarding a theft from the 1100 block of East Brown Road in Lookout Mountain, Hamilton County, Tennessee.

The theft itself involved an aggravated burglary of a residence at that location belonging to Mr. and Mrs. Lowry Kline. Ultimately, from that location, their . . . Audi SUV was taken. . . . [A]lso there were other items taken from the home, including $200 cash, the victim's car keys, a wallet, some other items from just inside the home.

. . . .

Sometime later, . . . officers from the Sumner County Sheriff's Department were involved in a chase regarding that same Audi SUV. . . .

Ultimately, officers found the vehicle wrecked off in the woods . . . . They also found multiple items from the burglary, including the victims' identification still inside the vehicle. . . .

[The defendant] fled the scene when the officers arrived, gave chase . . . multiple times. Ultimately, [the defendant] called in and reported that he had actually been involved and identified himself as being the one who had taken the [Audi].

There was also another witness on scene that was able to identify [the defendant] in a lineup as the driver of the [Audi] and being responsible for being in possession of it during the chase and eventual crashing [of] the vehicle.

At the sentencing hearing, the State asked that the trial court impose fully-incarcerative sentences but did not request consecutive alignment. A pre-sentence investigation report was exhibited to the hearing.

At the hearing, Mr. Lowry Kline, one of the victims, testified that on the night of the offenses, he "had some extensive remodeling and construction going on" at his house, and, as a result, "it was possible to gain entry to the house without going

-2-

through the doors." Also because of the construction, the Klines parked their vehicles on the street rather than in the garage. Mr. Kline testified that he awoke to find his wife's Audi Q7 and purse missing. He was later notified that the stolen vehicle along with some personal effects had been found in Sumner County, but it "was really damaged beyond repair." Mr. Kline testified that, following the burglary, he and his wife were concerned about repeated burglaries because their home remained unsecured due to the ongoing construction. On cross-examination, Mr. Kline testified that there was no forcible entry into his home during the burglary and that he and his wife were at home at the time of the offense.

Tennessee Department of Correction courtroom liaison Christina Barnes testified that the defendant had previously been granted determinate release on a prior sentence, but he violated the terms of his release by failing to report to the probation office. Based on that violation, Ms. Barnes filed a probation violation report on April 20, 2015. Later, Ms. Barnes filed an addendum to the report to include that the defendant "had obtained new charges and convictions." On cross-examination, Ms. Barnes testified that the defendant admitted to the probation violations and had been ordered to execute his sentences on those violations. On redirect examination, Ms. Barnes explained that the defendant was not arrested on the probation violation warrant until September 2017. She also stated that the defendant was ordered to serve his two-year sentences on the prior convictions on January 8, 2018.

The defendant testified that he had been "hearing voices since 2010." The defendant agreed that forensic evaluations had deemed him competent to stand trial and that an insanity defense could not be supported. The defendant described a religious experience in which he had been "appointed . . . as a prophet to the nations." The defendant testified that he "went up into [Mr. Kline's] house and got the Audi" because "God told [him] to go to that mountain." He stated that he "knew there would be consequences to pay" and that it "was a bad mistake, but in [his] heart of hearts, [he] wasn't stealing a vehicle" because "God gave [him] the authority" to take it. The defendant apologized for the emotional distress caused to the victims but reiterated that he "didn't do nothing wrong." When asked his wishes in regard to sentencing, the defendant responded, "I just want to take care of my family, my mom, my grandma and my girl and start a family, and find me a Bible-preaching church, talk to the pastor, get involved in something, and I want to pursue my calling."

On cross-examination, the defendant testified that he had undergone approximately six forensic evaluations, only one of which deemed him to have a mental disability. The defendant stated that he had never asserted a mental illness "to try to get out of a crime" but acknowledged that at one point he was diagnosed with depression.

-3-

The defendant testified that he had been a member of a gang in California and that, "at one time," he wanted to take over the gang. The defendant testified that, on the night of the offenses in this case, he was "dropped off at the foot of the mountain," and he walked to the Klines' property, where he entered through the unlocked back door. He stated that God told him which property to go to and which door would be unlocked. He admitted taking Mrs. Kline's purse and the Audi and returning to his home in East Ridge. He later drove the Audi to Nashville, where he saw a police car driving behind him and "took him on a chase" and "ended up in Sumner County." The defendant said he had two guns with him, and, after getting the Audi stuck in the mud, he shot it numerous times trying to hit the gas tank "to blow it up." Once he got the Audi out of the mud he "headed toward the cliff . . . to flip it," but it "hit a tree." Police officers arrived "a few minutes later," and the defendant fled.

During redirect examination, the defendant testified that he was no longer a gang member and that he had never claimed that he had a mental illness. Upon questioning by the court, the defendant explained that he pleaded guilty to charges in a Sumner County case and was sentenced to eight years of unsupervised probation. He stated that God "was upset about what [he] did to the Audi" because he "was supposed to return it."

The State requested a fully-incarcerative sentence "at the top of the range" based on several enhancing factors, including the defendant's lengthy criminal history, his prior probation violations, and his committing the present offenses while on probation. The defendant sought a sentence "at the bottom of the sentencing range" and asked the court to "consider alternative sentencing or split confinement, arguing that the offenses did not "cause[] nor threaten[] serious bodily injury" and that the defendant "absolutely believed . . . that his conduct was justified."

In rendering its decision, the trial court gave great weight to the fact that the defendant had a history of violating the terms of his release into the community, that he was on probation at the time he committed the present offenses, and that he had an extensive criminal record. The court imposed a 12-year sentence for the theft conviction and a six-year sentence for the aggravated burglary conviction and ordered the sentences to be served consecutively pursuant to Code section 40-30-115(b)(2). Additionally, the trial court ordered, pursuant to Tennessee Rule of Criminal Procedure 32(c)(2)(A)(i), that the present sentences be served consecutively to the sentence the defendant was serving in Sumner County because the conduct giving rise to that conviction "was part of the same criminal behavior" involving "the theft of multiple other vehicles."

In this untimely appeal, the defendant challenges the imposition of

-4-

consecutive sentences, arguing that the trial court "made no findings that [the defendant's criminal history] makes consecutive sentencing necessary to protect the general public, or that the aggregate sentence is reasonably related to the severity of the crime." The State contends that the trial court did not err.

We first address the untimeliness of this appeal. The judgment forms in the record indicate a date of entry of April 30, 2018, but they do not have a file-stamp date indicating when they were filed with the court clerk. *See State v. Stephens*, 264 S.W.3d 719, 729 (Tenn. Crim. App. 2007) ("[T]he effective date for entry of a judgment or order of sentence is the date of its filing with the court clerk after being signed by the judge.") *abrogated on other grounds as stated in State v. Randall T. Beaty*, No. M2014-00130-CCA-R3-CD, slip op. at 32 (Tenn. Crim. App., Nashville, July 8, 2016).

A notice of appeal must be filed "within 30 days after the date of entry of the judgment appealed from." Tenn. R. App. P. 4(a). This court may, however, waive the timely filing requirement "in the interest of justice." *Id.* We note that the defendant has not requested that this court waive his untimely filing; instead, he asserts that he filed his notice of appeal on May 30, 2017,[1] rather than on June 1, 2018, as indicated by the file-stamp date. Both the defendant and the State specify April 30, 2018, as the date of sentencing. The State acknowledges that the defendant's notice of appeal was filed on June 1, 2018, yet states that it was timely filed. Because the State does not argue that the defendant's notice of appeal was untimely and because we cannot know the date the judgments were filed with the court clerk, we will waive the untimely filing in the interest of justice and review this appeal on the merits. *See* Tenn. R. App. P. 4(a).

Our supreme court has adopted an abuse of discretion standard of review for sentencing and has prescribed "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 698-99 (quoting T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record

---

[1] Although his brief states the year as 2017, we presume that the defendant intended to indicate 2018.

demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10.

With respect to consecutive sentencing, our supreme court has held that the standard of review adopted in *Bise* "applies similarly" to the imposition of consecutive sentences, "giving deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013). In *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995), the supreme court imposed two additional requirements for consecutive sentencing when the "dangerous offender" category is used: the court must find that consecutive sentences are reasonably related to the severity of the offenses committed and are necessary to protect the public from further criminal conduct. *Id.* at 937-39; *see State v. Imfeld*, 70 S.W.3d 698, 707-08 (Tenn. 2002).

Here, the trial court found that the defendant had a lengthy criminal history as evidenced by the presentence investigation report and the defendant's own statements. The court also found that "a[n] aggravated burglary . . . is particularly violative of individuals' peace of mind and privacy and property," concluding that "the nature and characteristics of that criminal conduct are very concerning and should be addressed seriously." The court further found that the defendant previously "fail[ed] to comply with his release into the community" and that he committed the present offenses while on probation. The court found no mitigating factors, rejecting the defendant's argument that his offenses did not pose a threat of serious bodily injury or that the defendant believed he was acting under "some type of direction from the divine." Specifically, the court noted that the defendant admitted possessing a firearm illegally and evading law enforcement in the stolen vehicle and that aggravated burglary "is a crime that always creates the possibility of bodily injury." The court gave "no credence" to the defendant's testimony that God directed him to commit the crimes, finding that his testimony was "a feigned attempt to convince the court," "an example of very poor acting," and "a bunch of bunk." The court went on to find that the defendant's behavior at the sentencing hearing and his extensive criminal record "indicate[d] that his potential for rehabilitation [wa]s very[,] very poor."

The record supports the trial court's findings. The defendant's presentence investigation report shows a lengthy criminal history of at least 30 convictions spanning most of the defendant's adult life. The only times that the defendant had a gap of more than a few months before accruing new convictions was during periods of incarceration. Moreover, at the sentencing hearing, the defendant testified to engaging in other conduct that constituted criminal behavior.

Here, the trial court based its decision to order consecutive sentencing on the defendant's extensive history of criminal activity. Code section 40-35-11(b)(2) permits a trial court to impose consecutive sentences if it "finds by a preponderance of the evidence that . . . [t]he defendant is an offender whose record of criminal activity is extensive." T.C.A. § 40-35-115(b)(2). The trial court's finding of an extensive criminal history, which is amply supported by the record, is "a sufficient basis for the imposition of consecutive sentences." *Pollard*, 432 S.W.3d at 862. Because the trial court did not base its decision to impose consecutive sentences on the defendant's being a dangerous offender, the court did not err by failing to apply the *Wilkerson* factors. *See Wilkerson*, 905 S.W.2d at 937-39; *see also State v. Adams*, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997) ("Extensive criminal history alone will support consecutive sentencing." (citation omitted)).

Accordingly, we find no error in the trial court's decision to impose consecutive sentencing, and we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE